**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

| | |
|---|---|
| **ROBERT N. MELTZER, d/b/a** ) | |
| **THE MOUNTAIN STATES LAW GROUP,** ) | |
|  ) | |
| **Plaintiff,** ) | |
|  ) | **Civil Action No.** |
| **v.** ) | **22-10230-FDS** |
|  ) | |
| **THE TRIAL COURT OF THE** ) | |
| **COMMONWEALTH, by JOHN BELLO,** ) | |
| **ADMINISTRATOR,** ) | |
|  ) | |
| **Defendant.** ) | |

_____

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND**
**PLAINTIFF'S MOTION TO AMEND COMPLAINT**

**SAYLOR, C.J.**

This is a case arising out of a mask mandate implemented in the courts of the

Commonwealth of Massachusetts in response to the COVID-19 pandemic.  Plaintiff Robert N.

Meltzer is an attorney licensed to practice in Massachusetts.  He is proceeding _pro se_.

In July 2021, the Massachusetts Supreme Judicial Court issued a standing order requiring

all individuals entering state courthouses to wear masks to limit the spread of COVID-19.

According to the complaint, plaintiff was denied access to several Massachusetts courthouses

after refusing to wear a mask.  The Trial Court denied his request for an exemption from the

masking policy and offered him the alternatives of appearing by videoconference or taking short,

unmasked breaks outside of the courtroom during in-person proceedings.  He refused to accept

either alternative.

Instead, on February 10, 2022, plaintiff brought this lawsuit.  The complaint alleges that

the Trial Court violated his rights under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12165, by failing to provide a reasonable accommodation for his claimed condition.  He seeks monetary damages and declaratory and injunctive relief.

On September 2, 2022, plaintiff moved to amend his complaint in response to the Superior Court's adoption of Standing Order 1-22 on August 12, 2022, designating certain court proceedings to be "presumptively held by videoconference."  (Mot. to Amend, Ex. I at 3).  The proposed amendments would add the following claims:  a violation of the 14th Amendment "right of free access to the courts"; a violation of the Massachusetts Declaration of Rights; an additional violation of the ADA; and a violation of the Massachusetts Administrative Procedure Act, Mass. Gen. Laws ch. 30A, § 2(5)(b).

Defendant has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.  It contends that plaintiff lacks standing to bring this suit, that his claims are moot and/or barred by sovereign and absolute judicial immunity, and that the complaint fails to allege sufficient facts to state a claim for relief under the ADA.  It opposes the motion to amend on the ground that the amended complaint would fail to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and that amendment would therefore be futile.

Ostensibly, the subject of the complaint is disability discrimination.  Nonetheless, it says next to nothing about plaintiff's claimed disability.  Instead, it consists almost entirely of a rambling and hyperbolic tirade against the state court system generally and the mask requirement specifically.  Among other things, it compares the mask requirement to waterboarding, and invokes the United Nations Convention Against Torture (Compl. at 2); alleges that "the Trial Court does not seem to know how a court system works or why, or what lawyers actually do in a

courthouse" (*id.*); alleges that the mask requirement "grossly corrupted the very notion of the Court by transferring power from the people to access the building, to those who control the Zoom system" (*id.* ¶ 32); that it transformed the courts to "an austere and liminal dystopian and non-democratic space that . . . has been utterly alienating in a sterile environment that is mostly noteworthy as a utilitarian and uninviting human wasteland" (*id.* ¶ 36); that the defendant "has clearly forgotten what a court is" (*id.* ¶ 39); and that the response of government officials to the pandemic was a product of "mass hysteria" (*id.* ¶ 40).

Indeed, despite being 27 pages long, the complaint does not even identify the alleged disability from which plaintiff claims to suffer. It alleges only that he has a "*de jure*" disability (asserting vaguely that his "physician has specifically advised against the wearing of face masks in consultation with, and in review of, [his] [unidentified] medical status") and a "*de facto*" disability (asserting that his disability is caused by "the masking policy itself," which "would evaporate with termination of the policy or exemption to it"). (Compl. ¶¶ 88, 98).[1]

Plaintiff is, of course, entitled to his own opinions. But the issue here is not whether the SJC policy in 2021 was wise or unwise. Plaintiff is not the Chief Justice of the SJC, nor the administrator of the Trial Court, nor any other government official charged with the difficult task of formulating the response of the state courts to the COVID-19 pandemic. The only relevant question for this court is whether the policy, as applied to plaintiff, is lawful—in particular, whether it violates the Americans with Disabilities Act. For the reasons set forth below, the Court concludes that it does not.

Accordingly, and for the following reasons, the motion to dismiss for lack of jurisdiction

---

[1] It is unclear why the complaint refers to the policy-induced disability as "de facto" and his claimed medical disability as "de jure"; even accepting plaintiff's basic construct, those terms appear to be reversed. The Court will nonetheless use plaintiff's terminology.

will be denied, the motion to dismiss for failure to state a claim will be granted, and the motion to amend will be denied.

## I.    <u>Background</u>

The following facts are set forth as alleged in the complaint and attached exhibits.

### A.    <u>Factual Background</u>

Robert N. Meltzer is an attorney licensed to practice law in Massachusetts.  (Compl. ¶ 3). He practices under the name "Mountain States Law Group" in Concord, Massachusetts.

The Trial Court of the Commonwealth is a division of the Massachusetts state judiciary. John Bello is its Administrator.

#### 1.    <u>The Standing Order</u>

In July 2021, in response to the COVID-19 pandemic, the Massachusetts Supreme Judicial Court ("SJC") issued a standing order requiring that "all persons seeking entry to a Massachusetts state courthouse or other state court facility" wear "a mask covering their nose and mouth while inside a courthouse."  (Ex. 1 ("Fourth Standing Order") at 1-2).  The Standing Order provided that "[a]nyone who fails to wear a mask as required, after receiving a verbal warning will be required to leave the courthouse immediately or will be subject to such other sanction as the presiding judge or clerk-magistrate may order."  (*Id.*).  It further stated that "[t]he presiding judge or clerk-magistrate may modify this rule in a courtroom or hearing room during a judicial proceeding consistent with any policy established by the Trial Court or the relevant appellate court."  (*Id.*).  The Standing Order went into effect on July 12, 2021.

The Standing Order was issued by the SJC, not the Trial Court.  The Trial Court is the

4

only defendant in this case.[2]

## 2.    ADA Grievance Process

According to the complaint, in November 2021, Meltzer requested an exemption under the ADA from the mask mandate after (he claims) he was "barred from public participation in court proceedings in open court." (Compl. ¶ 52).

On November 8, 2021, Meltzer spoke with Barbara Lewiton, an ADA Coordinator with the Trial Court, to seek an exemption from the mask policy. (Ex. 3). He "did not disclose to her the nature of [his] disability." (*Id.*).

Lewiton offered Meltzer two accommodations: "appearing via video conferencing (Zoom) or arranging for frequent breaks to leave the courtroom so that [plaintiff could] remove [his] mask for several minutes at a time." (*Id.*). He rejected both of those proposed accommodations, and requested that he simply be exempted from the requirement. (*Id.*).

Meltzer then contacted the Director of the Office of Workplace Rights, Margaret Peterson Pinkham. When they spoke, "[he] stated that [he had] a condition called [redacted in exhibit], which [he] explained is not a disability, and [he] asserted it becomes a disability due to the Supreme Judicial Court's Standing Order requiring all persons to wear masks at all times while in state courthouse buildings." (*Id.*). Pinkham again rejected his request for exemption, concluding that "due to the threat to the health and safety of other court users and Trial Court employees, it is unreasonable to allow [Meltzer] to appear in the courthouse without a mask." (Ex. 3).

On November 29, 2021, Meltzer appealed that decision to the Administrator of the Trial

---

[2] The complaint nonetheless alleges that the Trial Court exceeded its constitutional powers by "legislating" health policy.

Court, John Bello.  (Compl. ¶ 55; Ex. 4).  He elaborated upon his argument that the SJC's Order

had imposed a "*de facto*" disability, and again rejected the court's proposed accommodations as

insufficient.  (Ex. 4 at 1-2).  He followed up on December 6, 2021, to supplement his appeal with

additional legal arguments and to note that he had "been barred from in-person hearings in the

Land Court, Middlesex Superior Court, Worcester Superior Court, Uxbridge District Court and

the Middlesex Probate and Family Court."  (Compl. ¶ 56; Ex. 5).  He also stated that he was

"incurring actual and severe monetary losses and damage to [his] law practice and its reputation"

as a result of his alleged inability to appear in court in person.  (Ex. 5).

On December 27, 2021, Bello concluded that the appeal was moot because the Land

Court hearing that Meltzer could not attend in person had been conducted "by videoconference

for all parties."  (Compl. ¶ 64; Ex. 6).

On January 17, 2022, Meltzer sent a letter to Bello expressing his belief that the Trial

Court had failed to comply with the requirements of the ADA and requesting reconsideration of

his request for exemption.  (Compl. ¶ 75; Ex. 7).  Bello responded on January 24, 2022,

indicating that his decision was final.  (Ex. 8 at 1).

### 3.    SJC Fifth Standing Order

On March 23, 2022, after this suit was filed, the SJC repealed the Fourth Standing Order

and replaced it with a Fifth Order Regarding Public Access to State Courthouses & Court

Facilities ("Fifth Standing Order").[3]  The new Order altered the policy on mask-wearing to

specify that "[m]ask wearing is encouraged inside courthouses" but "not required," except for

---

[3] On a motion to dismiss, the court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment:  (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).  The Court will consider the Fifth Standing Order as an official public record.

those "who have tested positive, experienced symptoms, or had close contact with someone with COVID-19 within the previous 10 days."  (Dkt. No. 10, Ex. 1).

### B.      **Procedural Background**

On February 10, 2022, Meltzer brought this lawsuit against the Trial Court.  The complaint alleges two counts.  First, it alleges that he was denied a reasonable accommodation under the Americans with Disabilities Act for his alleged "*de jure* disability," which prevents him from wearing a mask indoors.  (Compl. ¶¶ 87-93).  Second, it alleges that the mask mandate created a "*de facto* disability" that prevents him from engaging in court activities.  (Compl. ¶¶ 94-107).  This second claim, while fashioned as a cause of action under the ADA, also asserts a state-law separation-of-powers claim, specifically that the Trial Court exceeded its "superintendency power" in adopting the Fourth Standing Order.  (Compl. ¶¶ 100-103).

The complaint requests that the court issue a declaratory order stating that his rights were violated under the ADA and that defendant acted outside of its authority in adopting the Fourth Standing Order.  (Compl. at 26-27).  It also requests damages, costs, and attorney's fees. (Compl. at 27).  The complaint appears to request injunctive relief, though it does not specify in what form.  (Compl. ¶ 86).

In his opposition to the motion to dismiss (and not as a separate motion), Meltzer moved to strike Exhibits 3-5 and pages 14-17 of defendant's memorandum in support of its motion.[4] The Court will not consider the challenged documents here because they were not part of the complaint.  The Court addresses the challenged legal arguments as part of its analysis of plaintiff's ADA claim.

---

[4] The challenged exhibits are docket reports and e-mails indicating that Meltzer appeared at several hearings virtually.  The challenged pages contain defendant's argument that plaintiff was not denied meaningful access to public services "by reason of" a disability.

## II.   <u>Standard of Review</u>

### A.   <u>Fed. R. Civ. P. 12(b)(1) Standard</u>

On a motion to dismiss for lack of subject-matter jurisdiction, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)). If the party seeking to invoke federal jurisdiction "fails to demonstrate a basis for jurisdiction," the motion to dismiss must be granted. *Id.* When ruling on a motion to dismiss under Rule 12(b)(1), the court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

### B.   <u>Fed. R. Civ. P. 12(b)(6) Standard</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305

(1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III.   <u>Analysis</u>

Notwithstanding the labels used in the complaint, the Court understands plaintiff to be raising two claims.[5]  The first is a federal claim for failure to accommodate his disability in the provision of public services under Title II of the ADA.  The second is a state constitutional-law challenge to the validity of the Fourth Standing Order itself, on the basis that it exceeded the superintendency power of the Trial Court.  Because the court lacks diversity jurisdiction, it will first analyze the federal claim before deciding whether to exercise supplemental jurisdiction over the state claim.

### A.   <u>Standing</u>

Defendant first argues that the complaint does not allege that plaintiff has suffered an injury-in-fact sufficient to establish standing to bring this case.  Because "the court lacks jurisdiction to decide the merits of the underlying case" if a party lacks standing, the court will decide this issue first.  *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992).

Article III standing is a prerequisite for subject-matter jurisdiction, and "the plaintiff bears the burden of pleading facts necessary to demonstrate standing." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).  "The heartland of constitutional standing is composed of the familiar amalgam of injury in fact, causation, and redressability."  *Id.* at 731 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  "An injury sufficient to satisfy Article III must be 'concrete and

---

[5] Count One alleges a federal claim of "de jure" disability under the ADA.  Count Two alleges (in one count) a federal claim of "de facto" disability under the ADA and a state-law claim challenging the validity of the Fourth Standing Order.  The Court will analyze the ADA claims of "de facto" and "de jure" disability together.

particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Lujan*, 504 U.S. at 560) (internal quotation marks omitted).  Concreteness requires that an injury "actually exist," while particularization requires that an injury "affect the plaintiff in a personal and individual way."  *Lyman v. Baker*, 954 F.3d 351, 360-61 (1st Cir. 2020) (first citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016); and then citing *Lujan*, 504 U.S. at 560 n.1).  "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof," *Lujan*, 504 U.S. at 561, which here is "the plausibility standard applicable under Rule 12(b)(6)," *Hochendoner*, 823 F.3d at 730.

Plaintiffs challenging government-imposed mask mandates in federal court have frequently been unable to establish the required injury-in-fact.  Specifically, courts have declined to find standing where plaintiffs challenged mask mandates that had not yet been applied to them directly.  *See, e.g.*, *Bechade v. Baker*, 2020 WL 5665554 at *2 (D. Mass. Sept. 23, 2020) (plaintiff had not "suffered any concrete and particularized injury" resulting from the Massachusetts statewide mask mandate where she had not "*personally* been forced to wear a mask").  Courts have similarly declined to find that plaintiffs with medical conditions were injured where a mask mandate included exemptions for such conditions.  *See, e.g.*, *Beaudoin v. Baker*, 530 F. Supp. 3d 169, 174 (D. Mass. 2021) (no injury where plaintiff was exempt from mask requirement due to hearing impairment).  Finally, courts have been reluctant to find standing where plaintiffs have lodged generalized objections to mask policies, rather than claims of particularized harm.  *See, e.g.*, *Bechade*, 2020 WL 5665554 at *3 ("the general threat of fine . . . for noncompliance with the mask requirement" did not constitute an injury in fact because "[e]very resident of Massachusetts face[d] this same general threat of enforcement, and

[plaintiff] fail[ed] to plead any individual desire or intention to violate the mask requirement which might distinguish her from other residents.").

Nevertheless, this case seems to rest on a different footing.  While it is true that the Trial Court never forced plaintiff to wear a mask, the injury claimed in the complaint is to his alleged inability to practice his profession.  The complaint alleges that he was "denied access to court buildings," "los[t] the ability to engage in the practice of law as a trial lawyer," and "incur[ed] actual and severe monetary losses and damage to [his] law practice and its reputation" because of his claimed inability to appear in person.  (Compl. ¶ 2; Ex. 5 at 1).  Furthermore, the language of the Fourth Standing Order did not carve out exceptions for medical conditions, and plaintiff was in fact denied an exemption.  (Compl. ¶ 64; Ex. 6).  And although he was offered accommodations, he claims that those accommodations were unreasonable.  (Compl. ¶ 53). Finally, his alleged injury is distinct from that potentially suffered by all members of the public, because it derives from a claimed impairment that he says makes it uniquely harmful for him to wear a mask.  (Compl. ¶ 88 ("[Plaintiff's] physician has specifically advised against the wearing of face masks in consultation with, and in review of, [his] medical status.")).

Taken as true, those allegations are sufficient to show that plaintiff has standing to bring his claims.  His assertion that the masking policy was applied directly to him goes beyond a "general threat of enforcement" and establishes a claimed injury that is concrete and particularized.  Furthermore, this injury is traceable to the defendant's alleged conduct in denying him entrance into court buildings and declining his request for exemption.  *See Lyman*, 954 F.3d at 361 ("Causation is established by demonstrating a causal connection 'between the injury and the conduct complained of . . . .'" (quoting *Lujan*, 504 U.S. at 560-61)).  And the alleged injury is arguably redressable—for example, by an award of damages or an injunction

11

against future application of the mask requirement.  *See Delaney v. Baker*, 511 F. Supp. 3d 55, 68 (D. Mass. 2021) ("[T]he plaintiff must demonstrate that a favorable ruling will at least lessen the injury.").

Whether the plaintiff has standing to assert a claim is a distinct issue from whether the complaint states a claim upon which relief can be granted.  Put another way, simply because he claims an injury does not mean that the complaint adequately alleges a right to recover.  Nonetheless, to the extent that the motion to dismiss asserts a lack of standing, it will be denied.

### B.    <u>Mootness</u>

Defendant further contends that the subsequent Fifth Standing Order rescinding the mask requirement moots plaintiff's claims for declaratory and injunctive relief.[6]

Article III of the Constitution limits federal subject-matter jurisdiction to actual cases and controversies.  *See* U.S. Const. art. III, § 2.  "The doctrine of mootness enforces the mandate that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed."  *American Civ. Liberties Union of Mass. ("ACLUM") v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003)) (internal quotation marks and citations omitted)).  "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Id.*  (quoting *D.H.L. Assocs., Inc. v. O'Gorman*, 199 F.3d 50, 54 (1st Cir. 1999)).  The party invoking the doctrine bears the burden of establishing mootness. *Conservation L. Found. v. Evans*, 360 F.3d 21, 24 (1st Cir. 2004).  A court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's

---

[6] Plaintiff's claims for monetary losses resulting from the mask policy are not subject to a mootness analysis.

favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

Two First Circuit cases dealing with COVID-related orders are instructive here.  In
*Bayley's Campground, Inc. v. Mills*, 985 F.3d 153 (1st Cir. 2021), the plaintiffs challenged a
COVID-related executive order issued by the governor of Maine that required out-of-state
travelers to quarantine for two weeks upon arrival.  The First Circuit concluded that the
replacement of the original executive order with a less restrictive self-quarantine requirement did
not moot the claims for injunctive relief.  *Id.* at 155.  Despite the fact that "nothing in the record
suggest[ed] that the Governor rescinded [the executive order] for litigation-related reasons rather
than to account for changing [pandemic] conditions," the court concluded that the governor had
not "carried 'the formidable burden' that she bears 'of showing that it is absolutely clear the
allegedly wrongful burden could not reasonably be expected to recur.'" *Id.* at 157-58 (quoting
*ACLUM*, 705 F.3d at 53).

The court in *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3 (1st Cir. 2021) reached the
opposite result.  There, an arcade owner sought injunctive and declaratory relief from executive
orders that placed arcades in a later phase of reopening from COVID-19 restrictions than
casinos.  *Id.* at 6-7.  The First Circuit held that the plaintiff's claims were moot after the governor
returned arcades to the same re-opening phase as casinos, ended the state of emergency, and
rescinded all COVID-19 orders issued under the Civil Defense Act.  *Id.* at 9.

The facts here are more similar to *Bayley's Campground*.  Unlike in *Boston Bit Labs*,
where the governor had rescinded all emergency orders, here the Fifth Standing Order retains
some COVID-19 restrictions (although not a mask mandate) for entrants to state courthouses.  *Id.*
at 11.  Perhaps more importantly, the claim in *Boston Bit Labs* depended on the emergency order
treating classes of businesses differently, making it unlikely that the state would impose the same

policy in the future.  Here, it is not "unrealistically speculative" to expect that the Trial Court

might reimpose a mask mandate in the future if public-health conditions were to change.  *Id.* at

10.  Defendant therefore cannot meets its "formidable burden . . . of showing that it is absolutely

clear the allegedly wrongful burden could not reasonably be expected to recur."  *Bayley's*

*Campground, Inc.*, 985 F.3d at 157-58 (quoting *ACLUM*, 705 F.3d at 55).

Accordingly, the motion to dismiss the claims for declaratory and injunctive relief on the

basis of mootness will be denied.

### C.      Judicial Immunity

Defendant next contends that the actions of the Trial Court are protected by judicial

immunity.

Judges are absolutely immune from suits for damages for actions taken within their

jurisdiction and the scope of their judicial responsibilities.  *Mireles v. Waco*, 502 U.S. 9, 11-12

(1991).  "The doctrine of quasi-judicial immunity provides absolute immunity for those [other

than judges] who perform tasks that are inextricably intertwined with the judicial function."

*Nystedt v. Nigro*, 700 F.3d 25, 30 (1st Cir. 2012).

In determining whether an act is judicial, courts consider (1) whether the defendant

"perform[s] a traditional adjudicatory function"; (2) whether the defendant "decide[s] cases

sufficiently controversial that, in the absence of absolute immunity, he would be subject to

numerous damages actions"; and (3) whether the defendant "adjudicate[s] disputes against a

backdrop of multiple safeguards designed to protect [plaintiff]'s constitutional rights."

*Bettencourt v. Board of Registration in Med. of Com. of Mass.*, 904 F.2d 772, 783 (1st Cir. 1990)

(internal quotations omitted).  "The bedrock judicial function is . . . the adjudication of disputes,"

while "[o]ther traditional judicial functions include such things as 'weighing evidence, making

factual findings, reaching legal determinations, choosing sanctions, and expounding reasons for

[] decisions.'"  *Goldstein v. Galvin*, 719 F.3d 16, 25 (1st Cir. 2013) (first citing *Nystedt*, 700 F.3d

at 31; and then citing *Coggeshall v. Massachusetts Bd. of Registration of Psychologists*, 604 F.3d

658, 663 (1st Cir. 2010)).  Judicial immunity has not been extended to "administrative,

legislative, or executive functions." *Forrester v. White*, 484 U.S. 219, 227 (1988).

Here, the Trial Court performed an administrative rather than a quasi-judicial function

when it considered and denied plaintiff's request for exemption as part of its ADA grievance

process.[7]  The process of granting and denying requests for accommodations generally involves

the application of statutory and regulatory factors to individual applicants, rather than the

adjudication of disputes between parties.  And there are no facts suggesting that the ADA

coordinators acted in a courtroom context or in the course of a judicial proceeding.  *See Duvall v.

County of Kitsap*, 260 F.3d 1124, 1134-35 (9th Cir. 2001) (material issue of fact as to whether

trial court administrator who doubled as ADA coordinator acted in an administrative, rather than

quasi-judicial, function in implementing accommodation requirements under the ADA).

Accordingly, defendant's motion to dismiss on the ground of judicial immunity will be

denied.

### D.     Sovereign Immunity

Defendant next asserts that plaintiff's claims are barred by sovereign immunity.[8]

In *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court held that Title II of

the ADA validly abrogates state sovereign immunity insofar as it "creates a private cause of

---

[7] Again, the SJC is not named as a defendant, and therefore the Court need not consider whether the issuance of the Fourth Standing Order was an act of judicial character, or even an act of a legislative character entitling that court to legislative immunity.  *See Supreme Ct. of Virginia v. Consumers Union*, 446 U.S. 719 (1980).

[8] To the extent that plaintiff seeks to hold defendant Bello personally liable, there is no individual-capacity liability under Title II of the ADA, and the claim will be dismissed.  *Logie v. Massachusetts Bay Transportation Auth.*, 323 F. Supp. 3d 164, 177 (D. Mass. 2018).  Any claims against Bello in his official capacity will be dismissed for failure to state a claim.

action for damages against the States for conduct that *actually* violates the Fourteenth Amendment." *Id.* at 159.  Title II may also abrogate sovereign immunity if Congress's proscription of a "class of conduct" constitutes a valid exercise of its enforcement powers under Section 5 of the amendment.  *See id.*; *see also Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004).

Abrogation of sovereign immunity under Title II is determined on a claim-by-claim basis. *See Georgia*, 546 U.S. at 159.  Thus, for each claimed ADA violation, the complained-of conduct (1) must violate Title II and (2) either (a) must violate the Fourteenth Amendment or (b) its proscription must bear congruence and proportionality to the rights protected under that Amendment.  *Toledo v. Sanchez*, 454 F.3d 24, 31, 35 (1st Cir. 2006).  Courts must address the sufficiency of the Title II claim before proceeding to the constitutional analysis.  *Buchanan v. Maine*, 469 F.3d 158, 172-73 (1st Cir. 2006) (holding that a district court erred in reaching the merits of the Eleventh Amendment issue before resolving whether the complaint had stated a claim under Title II).

The Court does not reach the second prong of the analysis because it determines that the complaint fails to state a claim under Title II.

### E. <u>Title II of the ADA</u>

Title II of the ADA prohibits discrimination by public entities against persons with disabilities in the provision of public services, programs, or activities.  42 U.S.C. § 12132.  To state a claim, a complaint must allege "(1) that [plaintiff] is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability."  *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000).

The First Circuit has identified "denial of a reasonable accommodation the plaintiff needed to meaningfully access a public service" as one of three types of discrimination prohibited under Title II of the ADA, in addition to disparate treatment and disparate impact. *Snell v. Neville*, 998 F.3d 474, 500 n.35 (1st Cir. 2021) (citing *Nunes v. Massachusetts Dep't of Correction*, 766 F.3d 136, 144-46 (1st Cir. 2014)).  For accommodation-based claims, a public entity denies meaningful access if it refuses to "make reasonable modifications . . . when . . . necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  *Pollack v. Regional Sch. Unit 75*, 886 F.3d 75, 80 (1st Cir. 2018) (citing 28 C.F.R. § 35.130(b)(7)(i)).

The first question is whether the complaint adequately alleges that plaintiff is a "qualified individual" with a "disability" within the meaning of the ADA.

### 1. Qualified Individual

Persons with disabilities are "qualified" for protection under Title II of the ADA if "with or without reasonable modifications to rules, policies, or practices . . . [they meet] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).  For present purposes, the Court will interpret the program or activity at issue to be the ability to practice law in the state-court system. As a member of the Massachusetts bar, plaintiff is generally eligible to participate in court proceedings.  The principal question is therefore whether he suffers from a legally cognizable disability.

### 2. Disability

Courts apply a three-prong test to determine whether a disability exists under the ADA, considering (1) whether plaintiff has a physical or mental impairment; (2) whether the life

17

activities plaintiff relies upon are ''major''; and (3) whether the impairment substantially limits plaintiff's major life activities. *Carroll v. Xerox Corp.*, 294 F.3d 231, 238 (1st Cir. 2002) (internal citations omitted); *see also* 42 U.S.C. § 12102(1)(A).[9]  An impairment that is sporadic can qualify as a disability "if it would substantially limit a major life activity when active."  42 U.S.C. § 12102(4)(D).

The complaint here does not identify the impairment from which plaintiff purports to suffer.[10]  At various points in his interactions with the Trial Court, he declined to disclose "the nature of [his] disability"; asserted that his condition was "not a disability"; and claimed that it "bec[ame] a [*de facto*] disability due to the Supreme Judicial Court's Standing Order."  (Ex. 3; Compl. ¶ 98).  The complaint also alleges that plaintiff's "physician has specifically advised against the wearing of face masks in consultation with, and in review of, the Plaintiff's medical status," without indicating what that "medical status" might be.  (Compl. ¶ 88).

It is difficult to know what to make of that jumble of indefinite and contradictory statements.  Normally, a court is required to construe a *pro se* complaint liberally, but here the plaintiff is a lawyer—and a trial lawyer at that.  There is no obvious reason why the Court should be indulgent in the face of plaintiff's apparent unwillingness to draft a complaint that specifically alleges the disability from which he purports to suffer.[11]  And while the standard for pleading an

---

[9] The complaint does not allege one of the alternative bases for establishing the existence of a disability, either that plaintiff has a record of an impairment or that he is regarded as having an impairment.  42 U.S.C. § 12102(1)(B), (C).

[10] While the complaint generally claims that mask use is "dangerous to a broad swath of the population susceptible to conditions known as hypoxia and other forms of oxygen deprivation," it does not allege that plaintiff himself suffers from any such disorder.  (Compl. at Intro.).  Exhibit 3 attached to the complaint includes an e-mail from Margaret Peterson Pinkham in which she writes:  "When we spoke, you stated that you have a condition called [redacted]."  (Ex. 3).

[11] The Court is unaware of any case law supporting the proposition that the ADA recognizes what the complaint calls "*de facto*" and "*de jure*" disabilities as bases for separate causes of action.  The only case provided

ADA claim is not demanding, neither is it non-existent.  At a bare minimum, an ADA plaintiff

must allege that he or she has an impairment —otherwise the statute does not apply—and

identify what that impairment is—otherwise the defendant cannot fairly defend itself.  The

failure of the complaint here to identify plaintiff's impairment here is sufficient reason to grant

the motion to dismiss.

Even if plaintiff had identified an impairment, "[e]vidence of a medical diagnosis of

impairment, standing alone, is insufficient to prove a disability."  *Ramos-Echevarria v. Pichis,

Inc.*, 659 F.3d 182, 187 (1st Cir. 2011).  There must also be evidence that the impairment

substantially limits one or more of an individual's major life activities.[12]  The plaintiff is required

to specify the major life activity in which he claims to be substantially limited.  *Id.* at 188.

Whether an impairment substantially limits major life activities is "not intended to be a

'demanding standard' and should not engender 'extensive analysis'" in light of the ADA

Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553.  *Mancini v. City of

Providence*, 909 F.3d 32, 42 (1st Cir. 2018).  Generally, "an individual with a disability will be

able to establish coverage [under the ADA] by showing substantial limitation of a major life

activity other than working" because "impairments that substantially limit a person's ability to

work usually substantially limit one or more other major life activities."  29 C.F.R. pt. 1630,

App'x at 23.  When the *only* life activity impaired is working, the plaintiff must "show a

substantial limitation in his 'ability to perform a class of jobs or broad range of jobs in various

classes as compared to most people having comparable training, skills, and abilities.'"  *Mancini*,

909 F.3d at 42 n.6 (citing 29 C.F.R. pt. 1630, App'x at 24).

---

by plaintiff, *BST Holdings, LLC v. Occupational Safety & Health Admin., United States Dep't of Lab.*, 17 F.4th 604
(5th Cir. 2021), says nothing about either disabilities or the ADA.

[12] "Working" is recognized as a major life activity under the ADA.  42 U.S.C. § 12102(2)(A).

Even under those lenient standards, the complaint does not plausibly allege that plaintiff has a physical impairment that substantially limits a major life activity.  It generally alleges that the Fourth Standing Order "barr[ed] the Plaintiff from participating in social activity and regular life activity." (Compl. ¶ 81).  But it also alleges that his "disability" only exists when he is forced to wear a mask—indeed, it specifically alleges that "it is the masking policy itself which leads to the disability," and that the disability "would evaporate with the termination of the policy or exemption to it." (*Id.* ¶ 98).  Of course, the Fourth Standing Order did not require plaintiff to wear a mask outside the courthouse.  In fact, the complaint alleges that "[a]t no time during the alleged pandemic has the Plaintiff ever worn a face mask." (Compl. ¶ 97).  It is therefore unclear, to say the least, how his purported impairment, which is induced only by wearing a mask, affected his "social activity and regular life activity"—particularly when those activities, by definition, do not occur in the courthouse.

In any event, the only life activity of plaintiff that is allegedly impaired by his disability is working—more precisely, that portion of his occupation that requires him to appear as a lawyer in a state courthouse.  But the complaint fails entirely to allege a plausible basis for a claim of a "substantial" limitation on his ability to work as a lawyer, compared to other lawyers who have comparable training, skills, and abilities.

To begin, the great majority of the work of a lawyer with a litigation practice involves reading, writing, meeting with clients and witnesses, and other activities that occur outside the courthouse.  The complaint does not allege any condition that impairs plaintiff's work outside of the courtroom.  As for legal work that occurs in court, the complaint does not allege that his effectiveness as an advocate has been impaired by his alleged exclusion from the courthouse, compared to other lawyers who do not share his "disability."  During the pandemic, it became

commonplace for lawyers to appear by video for court hearings, and the complaint does not

allege that lawyers who do so are at a disadvantage compared to those who appear in person with

masks.

In fact, the complaint does not even *allege* that the mask mandate put plaintiff at a

relative disadvantage to other lawyers; to the contrary, it alleges that the mandate placed *all*

lawyers at the *same* disadvantage.  According to the complaint:

> The Defendant's actions in creating mask mandates and mandating remote hearings and
> barring the doors to the Court for two years has fundamentally prevented lawyers from
> being able to represent their clients within the legal system, eliminating the ability of
> lawyers to perform the usual and customary activities which transpire within the Court on
> a regular basis and which make the system work, not only in arguing motions and trying
> cases but by removing the interchanges between counsel and clerks and others within the
> court system . . . ."

(Compl. ¶ 34).  In other words, according to the complaint, the mask mandate did not impose a

"substantial limitation" on plaintiff's ability to perform work as a lawyer, compared to other

lawyers who have similar training, skills, and abilities.  *See Mancini*, 909 F.3d at 42 n.6.  Instead,

it treated all lawyers the same.  And that is simply not a plausible basis for a claim of

"disability," much less a claim of unlawful discrimination.

In summary, and taken in its entirety, the complaint fails to allege a cognizable

"disability" under the ADA.  Accordingly, the motion to dismiss for failure to state a claim will

be granted.

### 3.   Reasonable Accommodation

As noted, the complaint here alleges discrimination in the form of failure to make a

reasonable accommodation to plaintiff's disability.  Specifically, it alleges that the Trial Court

"has failed to engage in a good faith interactive process, and has failed to offer any form of

reasonable accommodation" to plaintiff.  (Compl. at 2).  It contends that the "proposed

'accommodation' offered by the Trial Court is not only unreasonable, but also reflects a lack of

understanding what the Trial Court is and how it is constitutionally configured." (*Id.* at 4). Plaintiff rejected out of hand the proposed accommodations—that he appear by videoconference for court hearings, and that he take short unmasked breaks when in the courthouse. The complaint refers to the former as an "absurd suggestion" and to the latter as a proposal that he "would only voluntarily suffocate for part of the time in the court building," (*id.* ¶ 53), and to both as a "canard." (*id.* ¶ 64). Plaintiff has sought no form of "accommodation" other than the elimination of the mask policy entirely.

In light of the Court's finding that the complaint fails to allege a "disability" within the meaning of the ADA, the Court need not reach the question of whether the complaint plausibly alleges that defendant failed to make a reasonable accommodation for that disability.[13]

### F.    Separation of Powers Claim

Having determined that plaintiff's federal claim under the ADA will be dismissed, the Court now turns to plaintiff's state-law claim. The complaint alleges that the Trial Court exceeded its superintendency power by "declar[ing] health policy" without demonstrating "any kind of compelling governmental need," and that even if the Trial Court had the authority to issue the Fourth Standing Order, it lacked a "nexus" to public need and was not "narrowly tailored." (Compl. ¶¶ 100-107). The complaint itself alleges that the SJC—and not the Trial Court—issued the Fourth Standing Order, rendering that claim somewhat incoherent. In any event, the Court will interpret this as a constitutional claim arising under state law.

If an action includes both federal-law and state-law claims, then the district court may

---

[13] To the extent that the complaint appears to allege the failure to engage in a good-faith interactive process as an alternative theory of liability under the ADA, the claim will also be dismissed for failure to show the predicate requirement of a qualifying disability. (Compl. Intro. at 2). Furthermore, plaintiff has moved to strike any discussion of the reasonableness of the accommodations from defendant's memorandum in support of its motion to dismiss, on the ground that this is a question for the jury. (Plaintiff's Opp'n at 18). Because plaintiff has failed to establish the existence of a disability, that argument is moot.

exercise supplemental jurisdiction over the state-law claims.  28 U.S.C. § 1367.  However, where

the claims based on federal law have been dismissed, or otherwise disposed of, a "district court

has discretion to decline to exercise supplemental jurisdiction" over the state-law claims.  *Uphoff*

*Figueroa v. Alejandro*, 597 F.3d 423, 431 n.10 (1st Cir. 2010); *see also* 28 U.S.C. § 1367(c)(3).

In so deciding, the court "must take into account considerations of judicial economy,

convenience, fairness to the litigants, and comity."  *Delgado v. Pawtucket Police Dep't*, 668 F.3d

42, 48 (1st Cir. 2012).  "[I]t can [also] be an abuse of discretion—if no federal claim remains—

for a district court to retain jurisdiction over a pendent state law claim when that state law claim

presents a substantial question of state law that is better addressed by the state courts."  *Wilber v.*

*Curtis*, 872 F.3d 15, 23 (1st Cir. 2017); *see also* 28 U.S.C. § 1367(c)(1).

 Here, the Court will decline to exercise supplemental jurisdiction over the state-law claim

after the only federal claim has been dismissed.  Because no discovery or motion practice has

occurred other than the present motions, dismissal of the state-law claims will not inconvenience

the parties nor impair the efficiency of court proceedings.  Furthermore, the complaint alleges a

substantial question of state constitutional law that would be best addressed, if at all, by the state

courts.

 Accordingly, because the Court declines to exercise its supplemental jurisdiction, and to

the extent the complaint asserts a state-law claim, it will be dismissed without prejudice.

## IV. Motion to Amend

 Plaintiff filed a motion to amend his complaint on September 2, 2022.  The amended

complaint seeks to add several claims in response to the Superior Court's Standing Order 1-22,

which provides that certain court proceedings shall take place by videoconference.

 Under Federal Rule of Civil Procedure 15, a party may amend its pleading once as a

matter of course within 21 days after serving it, or within 21 days after service of a responsive

pleading or motion under Rules 12(b), (e), or (f).  Fed. R. Civ. P. 15(a)(1).  In all other cases, a

party may amend a pleading only with consent of the opposing party or leave of the court.  Fed.

R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires," *id.*, "unless

the amendment would be futile or reward undue delay," *Abraham v. Woods Hole Oceanographic

Inst.*, 553 F.3d 114, 117 (1st Cir. 2009).

      "In the context of a motion to amend, 'futility means that the complaint, as amended,

would fail to state a claim upon which relief could be granted.'"  *Teva Pharms. Int'l GmbH v. Eli

Lilly & Co.*, 2022 WL 104911, at *6 (D. Mass. Jan. 11, 2022) (quoting *O'Leary v. New

Hampshire Boring, Inc.*, 323 F.R.D. 122, 126 (D. Mass. 2018)).  "If leave to amend is sought

before discovery is complete and neither party has moved for summary judgment, the accuracy

of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil

Procedure 12(b)(6)."  *Hatch v. Department for Children, Youth & Their Families*, 274 F.3d 12,

19 (1st Cir. 2001).  In short, an amendment must state a "plausible entitlement to relief."

*Rodríguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007) (quoting *Bell Atl. Corp.*,

550 U.S. at 559).

      The proposed amended complaint first alleges that Superior Court Order 1-22 violates

"the recognized 14th Amendment due process right" to "free access to the courts."  (Amend.

Compl. ¶ 113).  It also seeks to add an additional violation of the ADA on the ground that the

order requires "those with disabilities . . . to prove, on a daily basis, the existence of a recognized

disability in order to participate in the public administration of justice."  (Amend. Compl. ¶ 114).

Finally, it alleges that order violates the Massachusetts Declaration of Rights as exceeding the

superintendent power of the courts, as well as the Massachusetts Administrative Procedure Act

for failure to conduct public hearings before engaging in "rulemaking."  (Amend. Compl.

¶¶ 112, 116-125).

With respect to the Fourteenth Amendment and ADA claims, the proposed amended complaint does not allege that plaintiff has participated in proceedings falling within the categories presumptively held by videoconference under the Superior Court Order.  Nor has he sought permission from a judge to hold such a hearing in person, as allowed under the order. While plaintiff alleges generally that the administration of justice is impaired by remote proceedings, this amounts to a "generalized grievance" against a policy that he disagrees with in the abstract, rather than an concrete and particularized harm sufficient to establish standing.  *See Beaudoin*, 530 F. Supp. 3d at 175.  Nor has he shown that injury is "certainly impending," because he does not allege any plans to imminently engage in proceedings that would be subject to the order.  *See Delaney*, 511 F. Supp. 3d at 69.  Therefore, plaintiff has failed to establish that he has standing to bring his 14th Amendment and ADA claims.  And without a federal claim to establish federal question jurisdiction, the court declines to exercise supplemental jurisdiction over the proposed additional state law claims.

Accordingly, the motion to amend the complaint will be denied on the basis that amendment would be futile.

**V.    Conclusion**

For the foregoing reasons, defendant's motion to dismiss for lack of jurisdiction is DENIED and defendant's motion to dismiss for failure to state a claim is GRANTED.  Plaintiff's motion to amend the complaint and motion to strike certain pages and exhibits from defendant's memorandum are DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  December 9, 2022            Chief Judge, United States District Court